

200 Park Avenue
Suite 1700
New York, NY 10017
nelson.legal

**Michael R. Nelson**
C: 212 233 5083 • O: 212 457 1668
nelson@nelson.legal

March 9, 2021

**VIA ELECTRONIC MAIL**

Thomas Branigan, Esq.
Bowman and Brooke LLP
41000 Woodward Ave., Suite 200E
Bloomfield Hills, MI 48304
*Thomas.Branigan@bowmanandbrooke.com*

**Re:    Jing Wang, et al. v. Tesla, Inc.; Meet and Confer Related to Tesla's Various Discovery Deficiencies**

Dear Tom:

I write to initiate a meet and confer process regarding several outstanding discovery issues. In an effort to make our meet and confer as productive as possible, we have laid out Plaintiffs' position on each of the issues below. Especially given the amount of time that these issues have been pending, we propose a telephone or video call on March 12 or 15, which should give you plenty of time to review our position and discuss any issues with your client. Please confirm a time on one of those days when you, Mr. Fazio, and/or Mr. Berard can be available to move the meet and confer discussions forward.

<u>First</u>, we need to meet and confer regarding the deficiencies in Tesla's Responses to Plaintiffs' First Set of Interrogatories and Request for Production of Documents, of which there are many.

Two general items can be addressed as a preliminary matter:

1.   Tesla continues to rely throughout its responses on objections based on proportionality and its now well-worn refrain that Plaintiffs' discovery seeks information that "is not important to resolution of the case." We have explained on multiple occasions why Tesla is undervaluing this case, and why its proportionality objection is misplaced. To be absolutely clear, this is not a "nominal damages" case or a case about a "minor accident." At a minimum, even assuming the Court does not allow the amendment to assert class-wide damages (we believe it will), Plaintiffs' damages include the purchase price of the vehicle that was not as warranted and represented (~$135k), statutory damages, punitive damages, fees, and costs.

Tesla tries to minimize the amount of Plaintiffs' damages by pointing to the settlement payment they received from Progressive, but that argument is an absolute red herring. Plaintiffs are entitled to seek the full amount of their damages irrespective of any amount they received in settlement of their insurance claim, which at most would operate as a post-verdict set off against their compensatory damages. *See, e.g.*, *Hopper v. McCollum*, 885 N.Y.S. 2d 304, 304 (2009) (Plaintiffs are not precluded from maintaining an action against a defendant simply because they received payment from their insurance carrier.); *Fisher v. Qualico Contr. Corp.*, 98 N.Y.2d 534, 540 (2002) ("[T]his conclusion does not create a windfall for negligent defendants by allowing them to escape liability where a [plaintiff] has insured against the loss of [ ] property."); *see also Spectra Audio Research, Inc. v. Chon*, 880 N.Y.S. 2d 612 (2009) (damages are not limited to subrogation amount). Here, though, even that setoff would not apply because Plaintiffs have received a full assignment of Progressive's subrogation interest. Thus, there is no question that Plaintiffs can and do seek recovery of damages well in excess of $100,000 here—an amount that is hardly nominal or minor.

2. Tesla served its responses to Plaintiffs' written discovery requests on January 22, 2021, and committed to producing certain documents with those responses. More than a month later, we have not received a single document or any explanation for the delay. Please produce within the week all documents in response to the following Requests for Production:

   - No. 6 (lawsuit complaints alleging a defect in the autopilot driver assistance feature on a 2016 Model X caused a collision resulting in property damage and/ or personal injury);
   - No. 9 (copy of the 2016 Model X owner's manual and representative images of the pop-ups displayed to the driver relating to Autopilot use);
   - No. 12 (a copy of the image related to the subject incident that was captured by the Autopilot forward-facing camera on the subject vehicle, as discussed during the deposition of Mr. Javed; and all photographs taken by Carr Engineering at the joint inspection of the Vehicle).

   Please also produce the following documents within the week, as we have requested them now on multiple occasions going back to December 18, 2020:

   - The excel spreadsheet identified during Mr. Javed's deposition and marked as an exhibit at your request. *See* Javed Depo. p.188 (Mr. Branigan: "Do you want to make [the excel spreadsheet] an exhibit to the depo, Mike? We can do that if you want.").
   - The photograph that Mr. Javed accessed during his deposition and showed on the record.

In addition, we need to address the following specific deficiencies in Tesla's responses and objections to Plaintiffs' written discovery:

1. Plaintiffs' Interrogatory No. 3 requested that Tesla "Identify all individuals involved in constructing any final model inputs and evaluating any final model outputs from the Vehicle specifically or from Tesla's fleet generally." In response, Tesla simply directed Plaintiffs' to the "December 18, 2020 Deposition of Azam Javed for information responsive to this Interrogatory" and then stated a litany of boilerplate objections including its misplaced proportionality objections.

   Tesla cannot avoid responding to this or any of Plaintiffs' other Interrogatories by simply referencing deposition testimony. Such reference is legally improper and does not satisfy Tesla's obligation to provide a meaningful response. *See In re Savitt/Adler Litig.*, 176 F.R.D. 44, 49 (N.D.N.Y. 1997), citing *Mahoney v. Kempton,* 142 F.R.D. 32, 33 (D. Mass. 1992) ("totally improper" for party to designate prior testimony in response to interrogatories); *Smith v. Logansport Comm. Sch. Corp.,* 139 F.R.D. 637, 650 (N.D. Ind. 1991) (reference to depositions in response to interrogatories was "evasive and clearly insufficient"). Indeed, Tesla does not even identify the specific testimony on which it purports to rely, instead leaving Plaintiffs to discern which of Mr. Javed's statements Tesla seeks to adopt in response to this Interrogatory. But the burden of responding is on Tesla, not Plaintiffs.

   Tesla's objections are also misplaced. Interrogatory No. 3 seeks information directly related to Plaintiffs' vehicle, and is aimed at identifying the individual(s) who were responsible for analyzing data from the vehicle as well as Tesla's fleet generally, in large part because Mr. Javed was not adequately prepared to testify on these points (another reason Tesla cannot rely on his testimony in responding). Plaintiffs are entitled to discover this information in connection with their claims that the vehicle failed and specifically to understand why the vehicle's camera recognized the merging Audi but did not signal the vehicle to respond in any respect (a defect that appears endemic in this and similar Tesla models). To be clear, "final model inputs" means any data and parameter necessary for execution. Please promptly supplement Tesla's response to Interrogatory No. 3.

2. Plaintiffs' Interrogatory No. 4 requests that Tesla "Describe with particularity how the Vehicle's Automated Systems were designed and/or programmed to function and perform in connection with the Incident or under similar circumstances." In response, Tesla again directs Plaintiffs to the testimony of Mr. Javed, which is both legally improper and insufficient in that Mr. Javed was woefully unprepared. Tesla also relies on its boilerplate objections, and further objects that the interrogatory seeks "a narrative explanation of a complex system and expert analysis of vehicle data, which is not appropriate for an Interrogatory."

   As further discussed below, Plaintiffs have requested and again request that Tesla provide an adequately prepared corporate representative to testify regarding the design, programming, and functioning of what Plaintiffs agree is a complex system requiring expert analysis and explanation—which is exactly why Plaintiffs seek and are entitled to this discovery. But this alone does not excuse Tesla from responding to well-aimed written discovery regarding the design, programming and

functioning of its technology with respect to the Incident, particularly given Mr. Javed's testimony indicating either a significant design flaw or function failure in Plaintiffs' vehicle. *See Compagnie Francaise d'Assurance Pour le Com. Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 43 (S.D.N.Y. 1984) (rejecting objection that evidentiary detail sought was more appropriately elicited at depositions, and noting that interrogatories may effect judicial economy, reveal information which may not be obtained from the corporate defendants, avoid delay, and narrow issues for trial.). Please promptly supplement Tesla's response to Interrogatory No. 4.

3. Plaintiffs' Interrogatory No. 7 asks that Tesla "Describe with particularity how the Vehicle's data sensors were designed and/or programmed to function and perform in connection with the Incident or under similar circumstances." Tesla again directs Plaintiffs to the testimony of Mr. Javed; again, this is legally improper, and insufficient in any event based on the incomplete testimony given by Mr. Javed. Tesla also relies on its boilerplate objections, and claims that the phrase "designed and/or programmed to function and perform" is vague.

Plaintiffs are hard pressed to understand Tesla's vagueness objection, as the phrase Tesla identifies as vague is straightforward, and easily understood based on the plain English meaning of the words. To be clear, Plaintiffs seek to understand how the vehicle's data sensors were designed and/or programmed to function (if at all) in response to the merging Audi in the case of the accident at issue here, or to similar objects under similar conditions. This information is directly relevant to Plaintiffs' claims that their vehicle did not function as designed or programmed and/or that Tesla did not provide sufficient warnings about and failed to accurately represent the true capabilities of the vehicle. It should go without saying that, in order to understand whether the vehicle malfunctioned as well as the adequacy and accuracy of Tesla's statements about the vehicle's capabilities, it is necessary to understand how the vehicle was intended to function in the first instance. Tesla also does not get to simply pick and choose what signals may be pertinent to understanding the accident at issue; rather, Plaintiff is entitled to discover all available data and assess the pertinence of that data with their experts. *See Am. Fed'n of Musicians of the United States & Canada v. Sony Music Ent., Inc.*, No. 15CV05249GBDBCM, 2016 WL 3031029, at *5 (S.D.N.Y. May 2, 2016) (ordering defendant to respond to plaintiff's interrogatory, preventing defendant from unilaterally characterizing information sought). Please promptly supplement Tesla's response to Interrogatory No. 4.

4. Plaintiffs' Interrogatory No. 9 requested Tesla "Identify each and all of the data points the Vehicle's data sensors were designed and/or programmed to record during the Incident or under similar circumstances." In response, Tesla merely directs Plaintiffs to its response to Interrogatory No. 7.

For the reasons stated above as to why Tesla's response to Interrogatory No. 7 is deficient, Tesla's response to Interrogatory No. 9 is also deficient. Please promptly supplement Tesla's response to Interrogatory No. 9.

5. Plaintiffs' Interrogatory No. 10 asks Tesla to "Identify the format(s) in which the data identified in response to the preceding Interrogatory is captured or recorded (e.g., image, pixel, etc.), and the method by which it is transmitted to Tesla." In response, Tesla again improperly directs Plaintiffs to Mr. Javed's deposition testimony, and then states "beyond this, Tesla objects to this Interrogatory because it asks for information that is not proportional to the needs of the case and that is not important to resolution of the case."

   As previously noted, Tesla's own discovery responses acknowledge the highly complex nature of the vehicle technology at issue in this case, which will no doubt require expert analysis and opinion. In order to understand the vehicle function and alleged malfunction and the associated vehicle data, and so their experts can conduct a full analysis, Plaintiffs necessarily require from Tesla an explanation of the format in which vehicle data is captured and the method by which the data is transferred to Telsa (including, for example, whether the data is re-formatted or manipulated in any way in that collection and transfer, or when it is presented to consumers as suggested by Mr. Javed at his deposition. *See, e.g.*, Javed Depo. at 187 ("And then I rename the signal names as – at the top here and make some of these column over here nicer to look at with bolded letters and bolded words."). Tesla's categorical objection to responding to this Interrogatory is, accordingly, entirely misplaced. Please promptly supplement Tesla's response to Interrogatory No. 10.

6. Plaintiffs' Interrogatory No. 11 requests that Tesla "State whether any of the data collected or recorded by the Vehicle's data sensors at any time has been lost, deleted, overwritten, or otherwise compromised since the Incident and, if yes, explain the circumstances of and reason for such loss, deletion, overwriting, or compromise." Tesla responded, again with improper reference to Mr. Javed's testimony, and then with reference to the parties' joint inspection of the vehicle and the harvesting of the SD card during that inspection, which "is expected" to contain the data collected by the vehicle's sensors.

   Tesla does not answer Plaintiffs' question. The fact that the SD card harvested during the inspection "is expected" to contain certain data does not provide any clarity about whether the full set of data collected from the vehicle was at any time lost, deleted, overwritten, or otherwise compromised and, if so, the reasons why. The mere fact that *some* data exists on the SD card does not mean that the SD card contains *all* data collected or recorded from the vehicle's data sensors over time, or that the data has not been compromised in some fashion. Especially given Tesla's acknowledgment that the vehicle's data was "transmitted over-the-air to Tesla's servers," Tesla should have no problem confirming whether any of the data was lost, deleted, overwritten, or otherwise compromised. Tesla also committed to producing the data that was harvested from the SD card at the inspection of the vehicle. That inspection occurred approximately two months ago, yet Tesla has not produced the data it now directs Plaintiffs to consult—rendering Tesla's response a nullity. Please promptly supplement Tesla's response to Interrogatory No. 11.

7. Plaintiffs' Interrogatory No. 15 requests that Tesla "Identify the training or instructions provided to Tesla employees regarding how and what to communicate to potential and/or actual customers." Tesla's response references an as-yet-unproduced witness's testimony related to its "sales process," and then sets forth its standard boilerplate objections.

   As set forth above, the law does not allow Tesla to rely on prior deposition testimony in responding to written discovery requests, meaning that Tesla certainly cannot rely on testimony yet to come. Moreover, Tesla cannot rely on its talismanic recitation of boilerplate objections to avoid discovery that is directly aimed at Plaintiffs' claims that Tesla employees made material misrepresentations to Plaintiffs about the vehicle and its capabilities, including Plaintiffs' statutory claims for recovery related to Tesla's deceptive practices. In connection with these claims, Plaintiffs are entitled to discovery regarding the training and instruction Tesla provides its employees in communication with Tesla customers particularly as those communications relate to the functionality of the vehicle. Please promptly supplement Tesla's response to Interrogatory No. 15.

8. Plaintiffs' Interrogatory No. 17 asks Tesla to "Identify all human factors studies that Tesla has conducted or that have been conducted on Tesla's behalf, specifically as related to how a human driver and a Tesla automobile interact while the human driver is operating a Tesla, in part or in whole." Tesla's response is simply a laundry list of boilerplate objections.

   We have discussed Plaintiffs' discovery of human factors studies previously, and the distinct relevance thereof. Plaintiffs expressly allege in their complaint that Tesla's warnings and instructions to drivers are inadequate and fail, including because at times it is simply not possible for a human driver to safely respond to a situation. Plaintiffs further allege that Tesla is aware of this. *See* First Amended Compl. ¶ 50. Thus, Tesla's knowledge of and/or participation in human factors studies related to the interaction between machine and user is highly relevant to Plaintiffs' claims. Without limiting this request in any way, but so that Tesla can pinpoint its search as necessary, such studies might concern (a) how such interaction is affected by the human-machine interface dynamic; (b) how effective a Tesla is at prompting a human to be aware of a warning coming from a Tesla; (c) how well a human and a Tesla interact during a take-over request; (d) how effective a Tesla is at evaluating human engagement while driving in Autopilot, Traffic Aware Cruise Control, or Lane Keeping Assist; (e) pedal confusion situations; (f) "cut-in" and "cut-out" scenarios; and/or (g) scenarios where the human driver perceives the driving environment differently than the Tesla. This Interrogatory does not seek identification of expert witnesses or expert opinion. Please promptly supplement Tesla's response to Interrogatory No. 17.

9. Plaintiffs' Request for Production No. 15 seeks "All radar object lists related to the Vehicle." Tesla responds as follows: "Tesla objects to this Request as vague and ambiguous with respect to the undefined phrase "radar object lists," unintelligible, and asks for information that is not proportional to the needs of the case and that is

not important to resolution of the case. Tesla refers Plaintiffs to the data it has already produced and the data recovered during the January 19, 2021 joint inspection. Beyond that, Plaintiffs will need to specify the materials they are seeking. All detection data coming directly out of the Vehicle's neural network/s. Any such data should be provided in raw/unprocessed form or in the form at the earliest possible step/stage at which it was saved by Tesla, with format specifications to interpret the data."

Plaintiffs are confused by Tesla's response, as is appears incomplete. With respect to Tesla's vagueness objection, however, Plaintiffs clarify that "radar object lists" refers to a list of objects detected by the vehicle's radar. Tesla's corporate designee testified that objects sensed by the Tesla's cameras are recognized as objects and the objects are grouped into categories. *See* Javed Depo. at 92 ("So sensing of the Audi is done by both the camera and the radar, not just the radar alone. The camera identifies vehicles, lanes, and trucks, classifies them as these different categories of objects, and then the radar tries to find these objects in the vehicle's path.") Plaintiffs also refer Tesla to the discussion above as to why Tesla's attempt to rely on the prior data collection and the joint inspection is not an adequate response to this discovery, and further note that it is completely disingenuous for Tesla to direct Plaintiff to data that Tesla knows is not readable outside of Tesla. Please promptly amend or supplement Tesla's response to Request No. 15 and produce all responsive information.

10. Plaintiffs' Request for Production No. 16 requests "All detection data coming directly out of the Vehicle's neural networks." Tesla responds as follows: "Tesla objects to this Request as vague and ambiguous with respect to the undefined phrases "detection data," "coming directly out of" and "Vehicle's neural networks," unintelligible, and asks for information that is not proportional to the needs of the case and that is not important to resolution of the case. Tesla refers Plaintiffs to the data it has already produced and the data recovered during the January 19, 2021 joint inspection. Beyond that, Plaintiffs will need to specify the materials they are seeking."

Plaintiffs again refer Tesla to the discussion above as to why Tesla's attempt to rely on the prior data collection and the joint inspection is both inadequate and disingenuous. With respect to Tesla's vagueness objection, Plaintiffs clarify that "detection data" means all data related to detection of objects. Tesla's corporate designee confirmed that such data does exist. *See* Javed Depo. at 94-95. Please supplement Tesla's response to Request No. 16 and produce all responsive information.

11. Plaintiffs' Request for Production No. 20 requests "All Documents and Data regarding training or instructions to Tesla employees regarding how and what to communicate to potential and/or actual customers during the Relevant Period." Tesla responds that it "has agreed to produce a representative for deposition to address the issues raised by this Request. Beyond this, Tesla objects to this Request because it is overly broad and not limited to the subject incident or the claims in

> Plaintiffs' First Amended Complaint. Thus, this Request asks for information that is not proportional to the needs of the case and that is not important to resolution of the case. It is overbroad, unduly burdensome and harassing. Plaintiffs have not identified any specific marketing/advertising materials relied upon in connection with purchasing the vehicle, nor have they identified alleged misrepresentations that they allegedly relied upon in said materials."

> Tesla's objection and response to Request No. 20 is deficient for the very same reasons its objection and response to Interrogatory No. 15 is deficient, as addressed above. Please promptly supplement Tesla's response to Request No. 20 and produce all responsive information.

12. Plaintiffs' Request for Production No. 21 seeks "All Documents and Data regarding Tesla's advertising and marketing practices during the Relevant Period."

    Plaintiffs' Request for Production No. 22 requests "All Documents regarding Tesla's advertising and marketing practices of the 2016 Model X."

    Plaintiffs' Request for Production No 23 asks for "All Documents regarding Tesla's advertising and marketing practices of its AutoPilot (AP) feature."

    Plaintiffs' Request for Production No. 24 requests "All Documents and Data used by Tesla to support the claims made by Tesla in any advertisements, marketing materials, or other promotional Documents and/or Communications.

    Tesla's provides the same objections and response to each of these Requests, referring Plaintiffs to Tesla's response and objections to Request No. 20. For the reasons stated above as to why Tesla's response to Request No. 20 is deficient, Tesla's responses to Request Nos. 21-24 also are deficient. Please promptly supplement Tesla's responses to these Requests and produce all responsive information.

Second, we need to meet and confer regarding the additional depositions Plaintiffs have sought to take and Tesla's position on those depositions.

We can begin with Tesla's failure to prepare its "technical" 30(b)(6) witness, Azam Javed, for his testimony on December 18, 2020. As you know, Rule 30(b)(6) requires a corporate party to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters." *S.E.C. v. Morelli*, 143 F.R.D. 42, 45 (S.D.N.Y. 1992); citing *Mitsui & Co. (U.S.A.), Inc. v. Puerto Rico Water Resources Authority,* 93 F.R.D. 62, 67 (D.P.R.1981); *Marker v. Union Fidelity Life Insurance Co.,* 125 F.R.D. 121, 126 (M.D.N.C.1989) (under Rule 30(b)(6), deponent "must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation"). During his December 18 deposition, Mr. Javed was unprepared to testify regarding several topics; for example: he did not know whether the radar unit or the camera unit

of the vehicle were picking up the distance of the lead-vehicle data; he did not know where the data from the camera and radar units flow to; he did not know the low threshold speed for ultrasonic sensors and did not review the ultrasonic data; he did not know what images were being projected to the vehicle's driver or whether an image of the Audi merging in front of the vehicle appeared on the screens in the cockpit of the car; he did not evaluate what the Mobileye logs captured regarding the accident at issue, he did not know where the Mobileye logs are located, he did not know whether anyone at Tesla would know if Tesla received the Mobileye data for this instance; he did not know what an operational design domain is or if the subject vehicle has one; he did not know if Tesla logs raw sensor data; he did not know whether GPS data was captured or saved anywhere; he did not know if there is a diagram of data that flows from the vehicle. *See* Javed Depo. at 94, 96, 98-101, 138, 140-141, 143, 145-146, 151-152, 160. In short, Tesla failed to produce a witness prepared to provide complete and knowledgeable testimony, as is required under Rule 30.

Moreover, with all due respect, you repeatedly interfered with Plaintiffs' effort to obtain testimony, most notably by requesting breaks while questions from Plaintiffs' counsel were pending with the witness. Indeed, unbeknownst to us at the time, but as the witness later testified, you and Mr. McCarthy initiated a phone call to the witness on his cell phone and conferred with him *while a question was pending*, presumably to coach him on how to respond. You then prevented Mr. Javed from explaining what was discussed during the coaching session, instructing him not to answer questions as to what transpired. *Id.* at 41-45. This behavior is in direct defiance of the applicable Local Rules and basic standards of deposition conduct. Loc. R. 30.4 ("An attorney for a deponent shall not initiate a private conference with the deponent while a deposition question is pending, except for the purpose of determining whether a privilege should be asserted."). You also refused to allow the witness to expand on his own testimony, threatening to shut down the deposition and get the "Goddammed judge on the phone." Javed Depo. at 120-131.

Based on all of this, Plaintiffs request that Tesla provide, in short order, a date when we can reconvene Tesla's 30(b)(6) "technical" deposition so that Mr. Javed or another adequately prepared representative can testify fully and completely on behalf of Tesla.

In addition, as you know, on February 3, 2021, Plaintiffs served deposition notices of current and former Tesla employees, including the technical witnesses identified by Mr. Javed and Tesla Service Center Managers and salespeople of the Tesla locations that Plaintiffs visited while exploring whether to purchase the subject vehicle. We were surprised when, after sitting on the notices for well over a week and not responding to courtesy follow-up communications from us to confirm dates, Tesla's response was a blanket refusal to produce the witnesses on the purported basis that the noticed depositions are not proportional to the needs of the case. We also were surprised by Tesla's claim that the multi-car wreck at issue in this matter "would not have happened if Mr. Chan had simply applied the brake." This statement completely (and conveniently) ignores that the proximate cause of the accident at issue is the fact that the vehicle failed to operate correctly and as represented to Mr. Chan. Perhaps most surprising of all, though, was the position that Plaintiffs' claims here are somehow suspect, and Tesla should not be subject to discovery, because this law firm has brought other legitimate claims against Tesla and is following discovery procedures in those cases. Plaintiffs allege that Tesla is engaged in a pattern and practice of knowingly misrepresenting the safety and capability of its cars—in essence, that Tesla's self-driving technology is not ready for prime-time, yet Tesla continues to beta test its

technology using its customers as test drivers.[1]  There should be no surprise on Tesla's part that other cases are pending—with this law firm and others—when Tesla continues to use customers to test its product before it is ready for "full self-driving" as Tesla repeatedly claims.  The fact that other these other cases are pending against Tesla in no way delegitimizes Plaintiffs' claims here *or* the discovery they seek to obtain.

Your recent refusal to produce witnesses is further surprising because Tesla previously *agreed* to cooperate in the discovery Plaintiffs now seek.  Specifically, by email on December 2, 2020, you indicated that Tesla would agree to arrange the deposition of Tesla's former employee, Meghan Mack, who made direct representations to Mr. Chan about the vehicle's capabilities and is identified in both the Amended Complaint and Tesla's initial disclosures.  The only request was that the deposition take place in the new year.  Plaintiffs request that Tesla produce Ms. Mack and the other critical witnesses it has identified, and cooperate as agreed.

<u>Finally</u>, in light of the multiple deficiencies detailed above, we have determined that it is necessary to adjourn the "marketing" 30(b)(6) deposition scheduled for this Friday, March 12.  Plaintiffs simply cannot proceed with that discovery without the other discovery that Plaintiffs have requested but have not yet received either because of Tesla's objections or failure to produce promised information (including, but not limited to, Tesla's failure to produce an adequately prepared "technical" witness).  We will re-notice that deposition once the broader discovery issues have been resolved.

We look forward to hearing from you regarding a time to continue these meet and confer discussions, and hope we can resolve many if not all of the issues without intervention of the Court.

Very truly yours,

Michael R. Nelson

cc:   Matthew Berard, Esq.
      Peter Fazio, Esq.
      Stephanie Niehaus, Esq.
      Jessica Bradburn Loucks, Esq.

---

[1] We note that Plaintiffs are not the only ones to observe that Tesla has been exploiting of its customers as "guinea pigs" to fine tune its technology.  *See* https://www.latimes.com/business/story/2021-02-04/news-analysis-federal-auto-safety-agency-left-a-massive-pile-for-biden