UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JING WANG and WAI-LEUNG CHAN,

                    Plaintiffs,

-against-

TESLA, INC.,

                    Defendant.

**MEMORANDUM & ORDER**
20-CV-3040 (NGG) (SJB)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Wai-Leung Chan was involved in a car accident while driving a vehicle he purchased from Defendant Tesla, Inc. ("Tesla") under the name of his spouse, Plaintiff Jing Wang. Plaintiffs brought this action for breach of express and implied warranties, failure to warn, deceptive and misleading business practices and false advertising, common law fraud, and negligent misrepresentation against Tesla. (Am. Compl. (Dkt. 18).) Before the court is Defendant's Motion to Dismiss Plaintiffs' fraud claim and Plaintiffs' prayer for punitive and exemplary damages pursuant to Fed. R. Civ. P. 12(b)(6), and Defendant's Motion to Strike several paragraphs of the Amended Complaint pursuant to Fed. R. Civ. P. 12(f). (Tesla Mot. to Dismiss ("Tesla Mot.") (Dkt. 24-1); Pls.' Mem. in Opp. to Def.'s Mot. to Dismiss ("Opp.") (Dkt. 24-3); Tesla Reply to Opp. ("Tesla Reply to Opp.") (Dkt. 24-4).)

For the reasons set forth herein, Defendant's Motion for Partial Dismissal and Motion to Strike is granted in part and denied in part. The court grants dismissal of Plaintiffs' fraud claim, but denies Defendant's motion to dismiss Plaintiffs' prayer for punitive and exemplary damages and Defendant's motion to strike portions of Plaintiffs' Amended Complaint.

1

## I. BACKGROUND

In or around 2015, Plaintiff Chan became interested in purchasing a Tesla vehicle for his daily commutes through Long Island traffic. (Am. Compl. ¶¶ 23-24.) He was especially intrigued by Tesla's Autopilot feature, which, according to Tesla, is designed to help drivers navigate "the burdensome parts of driving." (*Id.* ¶¶ 9, 24.) Tesla vehicles equipped with Autopilot technology assist drivers in a number of ways: the cars can steer, accelerate, and brake automatically; they can match their speed to surrounding traffic; they are able to accelerate and decelerate to maintain a specified distance behind the nearest vehicle; they can change lanes on the highway; and they can detect nearby cars to prevent accidents. (*Id.* ¶ 7.) Tesla touts one of its vehicles equipped with Autopilot, the Model X, as "the safest, quickest, and most capable sport utility vehicle in history" and "the safest SUV ever." (*Id.* ¶ 6.)

Prior to his purchase of a Tesla vehicle, Plaintiff Chan states that he visited Tesla's website almost weekly to learn about Tesla vehicles' capabilities. (*Id.* ¶ 23.) Based on his research on the company's website, Chan believed that a Tesla vehicle would be uniquely suited to his transportation needs. (*Id.* ¶ 28.) Plaintiff Chan visited showrooms in Syosset, New York and Manhasset, New York to test drive the Model S and Model X vehicles, respectively. (*Id.* ¶¶ 25-30.) During Plaintiff's visit to the Manhasset showroom, an agent assured him that the Autopilot feature would be well-suited to his commutes and that "he could take the Tesla into the HOV lane . . . and then close his eyes and 'relax.'" (*Id.* ¶ 29).

Relying on what he learned from Tesla's website and from his showroom visits, Chan purchased a Model X, which he claimed in Tesla's Brooklyn, New York showroom in September 2016. (*Id.*

¶¶ 32-33.) Plaintiffs allege that neither Tesla nor its representatives ever warned Plaintiffs about the limitations of Model X and the Autopilot feature or provided proper instructions on operating Model X and the Autopilot feature, either through Tesla's website or during Plaintiff Chan's visits to Tesla's showrooms. (*Id.* ¶¶ 33-35.)

On December 13, 2017, Plaintiff Chan got into an accident while driving the Model X on the Long Island Expressway through dense traffic. (*Id.* ¶¶ 37-38.) Plaintiffs contend that as a white Audi merged in between Chan's car and a tractor-trailer in front of him, the Autopilot feature failed to react, warn Chan of an impending collision, or operate its "Automatic Emergency Breaking" function. (*Id.* ¶¶ 40-41.) With just one second to react, Plaintiff Chan steered to the left, attempting to avoid a collision, and he instead collided with two other cars. (*Id.* ¶ 42.) The Autopilot feature did not recognize this impending collision, either, and it again failed to engage its "'Automatic Emergency Breaking'" function. (*Id.*) Plaintiff Chan claims he operated the vehicle in a reasonable manner and was alert the entire time. (*Id.* ¶¶ 39, 44.) The collision caused severe damage to Plaintiffs' Model X, which was deemed a total loss, and damage to two other vehicles; there is no allegation that it caused bodily injury. (*Id.* ¶ 43.)

## II. LEGAL STANDARD

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[1] A complaint must contain facts that do more than

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

present a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To decide Defendants' motions to dismiss, the court "will accept all factual allegations in the [c]omplaint as true and draw all reasonable inferences in [Plaintiffs'] favor." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). However, the court will "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court must then evaluate the "well-pleaded factual allegations" and "determine whether they plausibly give rise to an entitlement to relief." *Id.* This plausibility analysis "does not impose a probability requirement at the pleading stage," but requires the complaint to provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

### B. Motion to Strike Pursuant to Fed. R. Civ. P. 12(f)

Motions to strike "are not favored and will not be granted unless . . . the allegations in question can have no possible bearing on the subject matter of the litigation." *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011). "Rule 12(f) motion[s] to strike matter as impertinent or immaterial, will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Id.* By the same token, matters should be struck due to impertinence only where "the allegation bears no possible relation whatsoever to the subject matter of the litigation." *AdvanceMe, Inc. v. Lenders Int'l*, No. 11-CV-3624(VB), 2011 WL 6425488, at *2 (S.D.N.Y. Dec. 19, 2011). To prevail on a Fed. R. Civ. P. 12(f) motion to strike, the movant must establish that: "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Lynch*, 278

F.R.D. at 63 (*citing Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)).[2]

### III. DISCUSSION

Tesla moves to dismiss on two grounds. First, Tesla argues that Plaintiffs fail to state a claim for fraud under Fed. R. Civ. P. 12(b)(6). (Tesla Mot. at 5.) Second, Tesla argues that Plaintiffs' Amended Complaint does not state a cognizable claim that permits punitive or exemplary damages. (*Id.* at 9.) Tesla also moves to strike several paragraphs from Plaintiffs' Amended Complaint as immaterial and impertinent to Plaintiffs' claims. (*Id.* at 10.)

#### A. Motion to Dismiss Plaintiffs' Fraud Claim

In the sixth cause of action raised in their Amended Complaint, Plaintiffs allege that Tesla has "intentionally made false representations of material fact regarding its vehicles, including that its Autopilot function is safe and ready to be used in common traffic situations and specifically in heavy highway traffic." (Am. Compl. ¶ 97.) They argue that the statements Tesla has made directly to Plaintiffs and to the public, through Tesla's website and showroom agents, "were likely to deceive a reasonable consumer and did deceive Plaintiffs into purchasing a Tesla vehicle." (*Id.* ¶ 99.) Furthermore, according to Plaintiffs, these misrepresentations about the Model X and its ultimate failure to perform as represented are the direct and proximate cause of Chan's accident. (*Id.* ¶ 104.)

To state a claim for fraud, Plaintiffs must establish " a misrepresentation or a material omission of fact  which was false and known to be false by defendant,  made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other

---

[2] Because the relevant claims in this action arise under state law, the court applies New York substantive law in deciding the motion to strike.

party on the misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E. 2d 1370, 1373 (N.Y. 1996). Additionally, Fed. R. Civ. P. 9(b) requires that, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud[.]" In order to satisfy this particularity standard, a complaint alleging fraud must ordinarily: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F. 3d 16, 25 (2d Cir. 2016). Fed. R. Civ. P. 9(b) "is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991).

Tesla argues that Plaintiffs have failed to state a claim for fraud, as they have not pleaded all the requisite elements of a common law fraud claim. Tesla also argues that Plaintiffs have made only vague allegations that fail to satisfy the particularity standard of Federal Rule of Civil Procedure 9(b). Moreover, Tesla contends that even if Plaintiffs did make out a claim for fraud and meet the particularity standard, their claim still fails because the alleged fraud is predicated on an omission and there is no fiduciary relationship between the two parties.

Plaintiffs allege that they justifiably relied on misrepresentations about the Autopilot technology made on Tesla's website. (Am. Compl ¶ 99.) Their Amended Complaint cites specific statements touting the safety and efficacy of the Model X and Autopilot Technology that appeared on Tesla's website at the time Plaintiffs drafted their complaint, including that the Model X is the "safest, quickest, and most capable sport utility vehicle in history" and "the safest SUV ever" and that the Autopilot feature assumes "the

burdensome parts of driving." (*Id.* ¶¶ 6, 8.) However, the Amended Complaint does not allege that Plaintiffs viewed and relied upon these specific statements on Tesla's website in 2015 or 2016, when they made the decision to purchase a Model X. Indeed, it is not clear from the complaint what representations on Tesla's website Chan read and allegedly relied upon prior to Plaintiffs' purchase of the Model X. Because Plaintiffs do not identify the specific representations on Tesla's website that they relied upon, their fraud allegations regarding Tesla's website fall short of Rule 9(b)'s particularity requirement.[3]

Plaintiffs also allege that they were misled by statements made by Tesla representatives in the Manhasset and Syosset showrooms, including "routine[] misrepresent[ations] and overstate[ments] [of] the capabilities of Autopilot and the required operator involvement," such as representations that the Model X was uniquely suited to Plaintiff Chan's needs, that it would perform well in traffic, and that Chan could close his eyes and relax after putting the car in Autopilot. (Am. Compl. ¶¶ 17, 26-27, 29-31.) Plaintiffs argue that their allegations are sufficiently specific to support a fraud claim, as they have identified the fraudulent statements on which they base their claim, identified the speakers, designated the time period and place, and described the nature of the statements. (Opp. at 6.) However, aside from the alleged statement by a Manhasset showroom agent that Chan could "close his eyes and relax" when utilizing

---

[3] Plaintiffs state that their fraud allegations are adequate because pleading on "information and belief" is allowed in certain instances. (Opp. at 6.) However, where pleading is allowed on information and belief, "a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d. Cir. 1990). Here, Plaintiffs' Amended Complaint suggests in vague terms that Plaintiffs were misled by their review of Tesla's website. They have not alleged with any particularity, either with knowledge or upon information and belief, what representations they relied upon.

7

the Autopilot technology, Plaintiffs do not allege specific misrepresentations that were made during Chan's visits to the showrooms. That statement, by itself, does not meet the elements of a fraud claim. Plaintiffs have failed to present facts that "give rise to a strong inference of fraudulent intent." *See S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996). To demonstrate a strong inference of fraudulent intent, plaintiffs must allege "facts indicating that the defendant[] had both motive and opportunity to commit fraud or facts that amount to strong circumstantial evidence of conscious misbehavior or recklessness." *Carmona v. Spanish Broad. Sys., Inc.*, No. 08-cv-4475 (LAK), 2009 WL 890054, at *5 (S.D.N.Y. Mar. 30, 2009). The facts alleged in Plaintiffs' Amended Complaint fail to give rise to an inference of that nature.

Plaintiffs also allege that Tesla committed fraud by failing to adequately disclose the defects or limitations of the Autopilot technology. To allege fraud based on a failure to disclose under New York law, one party must have "information that the other party is entitled to know because of a fiduciary or other similar relation of trust and confidence between them." *United States. v. Szur,* 289 F.3d 200, 211 (2d Cir. 2002). A fiduciary relationship "may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge, but an arms-length business relationship does not give rise to a fiduciary obligation." *In re Refco Sec. Litig.,* 759 F. Supp. 2d 301, 323 (S.D.N.Y. 2010). "When parties deal at arms length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *In re Mid-Island Hosp., Inc.,* 276 F.3d 123, 130 (2d Cir. 2002).

"However, there may be a relationship of trust and confidence sufficient to give rise to a duty to disclose under the 'special facts doctrine.'" *Travelers Indem. Co. of Illinois v. CDL Hotels USA, Inc.*,

322 F. Supp. 2d 482, 499 (S.D.N.Y. 2004). "'Under [the special facts doctrine], a duty to disclose arises where one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair.'" *Woods v. Maytag Co.,* 2010 WL 4314313, at *10 (E.D.N.Y. Nov. 2, 2010) (quoting *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.,* 301 A.D.2d 373, 378 (1st Dep't 2003)). To state a claim under the special facts doctrine, a plaintiff must allege that: "(1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank,* 57 F.3d 146, 155 (2d. Cir. 1995).

Because Plaintiffs and Tesla were engaged in an arm's-length transaction, Tesla had an affirmative duty to disclose only if the special facts doctrine applied. Plaintiffs argue that Tesla's superior knowledge of essential facts regarding the Autopilot technology's limitations and defects established a duty to disclose. (Opp. at 8.) Plaintiffs, however, have not alleged with any specificity what alleged defects were concealed from them, nor have they adequately alleged that information regarding the limitations of the technology was unavailable to them via Tesla's website, the Model X owner's manual, or other publicly available sources. Accordingly, the facts alleged do not give rise to a claim that Tesla committed fraud by failing to affirmatively disclose "special facts" that were known to Tesla and unknowable by Plaintiffs.

### B. Motion to Dismiss Prayer for Punitive and Exemplary Damages

Under New York law, a plaintiff may recover an award for punitive damages on a tort claim where the defendant's actions rise to the level of "gross, wanton, or willful fraud or other morally culpable conduct." *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d

9

504, 509 (2d Cir. 1991). Notably, the trend among courts applying New York law seems to be to deny attempts to dismiss prayers for punitive damages at the motion to dismiss stage because it is "not even clear that there is a requirement that a complaint seeking punitive damages must plead specific facts that would support an award of such damages." *Amusement Indus., Inc. v. Stern,* 693 F. Supp. 2d 301, 318 n.5 (S.D.N.Y. 2010). "A motion to dismiss is addressed to a 'claim' – not to a form of damages." *Id*. Additionally, "there is no separate cause of action in New York for punitive damages." *Martin v. Dickson,* 100 F. App'x 14, 16 (2d Cir. 2004). "[W]hether there is sufficiently egregious conduct to support an award of punitive damages is an evidentiary matter that cannot be decided on a motion to dismiss." *New York Islanders Hockey Club, LLP v. Comerica Bank—Texas,* 71 F. Supp. 2d 108, 120-21 (E.D.N.Y. 1999). As such, "[b]ecause punitive damages are a form of damages, not an independent cause of action, a motion to dismiss a prayer for relief in the form of punitive damages is procedurally premature." *Hunter v. Palisades Acquisition XVI, LLC,* 16 Civ. 8779 (ER), 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017).

In the instant case, Plaintiffs' Complaint demands punitive and exemplary damages on underlying causes of action. *See Amusement Indus., Inc.,* 693 F. Supp. at 318 n.5 (S.D.N.Y. 2010). Accordingly, the court denies Tesla's motion to dismiss Plaintiffs' prayer for punitive damages as procedurally premature. *See Hunter,* 2017 WL 5513636, at *9.

### C. Motion to Strike Portions of Plaintiffs' First Amended Complaint

Tesla also moves to strike six paragraphs of Plaintiffs' First Amended Complaint, which allege facts concerning the safety of Tesla's vehicles, including a 2019 car accident involving a different Tesla model and a 2020 report by the National

Transportation Safety Board. Specifically, Plaintiffs allege in the relevant paragraphs that:

> 14. Tesla tries to distance itself from potential liabilities by initially referring to the Model X operating software as being in a "beta-testing phase." After Germany's Federal Office for Motor Vehicles refused to approve Autopilot for use on German roads, Tesla explained that the word "beta" is not used in the standard sense of the word but was used to make sure Tesla drivers do not get too comfortable with its autopilot system.
>
> 15. Rather than providing transparent disclosures, Tesla tells its customers and regulators that when Autopilot fails, the driver is the fallback option to resume control of the vehicle. This fallback plan is unreliable and unsafe. Not only has Tesla been warned by the NTSB that drivers of their automobiles may become overly reliant on the Autopilot technology, but Tesla also knows or should know, based on scientific and engineering publications, that drivers have a limited ability to execute a "take over response" when Autopilot does not measure up. Indeed, the "takeover response" time for humans varies greatly depending on the circumstances: the type of stimuli, the type of control necessary, and the driving situation. Even the most attentive drivers need a certain amount of time to perform a takeover response. The malfunctioning and defective Autopilot system does not allow for that margin of time, nor does it provide a sufficient warning to enable the driver to properly respond. In other words, Tesla knows that reasonable drivers will not, and more significantly, perhaps cannot safely use Autopilot. . . .
>
> 18. The NTSB has investigated several Tesla-related fatalities. For example, in Mountain View,

California, a Tesla's Autopilot malfunctioned, and the vehicle accelerated into a cement median at a merge point of two intersecting highways, killing the driver. The NTSB investigation resulted in a report published on March 23, 2020 which stated, in part:

Probable Cause – The National Transportation Safety Board determines that the probable cause of the Mountain View, California, crash was the Tesla Autopilot system steering the sport utility vehicle into a highway gore area due to system limitations, and the driver's lack of response due to distraction likely from a cell phone game application and overreliance on the Autopilot partial driving automation system. Contributing to the crash was the Tesla vehicle's ineffective monitoring of driver engagement, which facilitated the driver's complacency and inattentiveness.

19. Furthermore, the NTSB's report noted the following:

a. The Tesla Autopilot did not provide an effective means of monitoring the driver's level of engagement with the driving task;

b. Because monitoring of driver-applied steering wheel torque is an ineffective surrogate measure of driver engagement, performance standards should be developed pertaining to an effective method of ensuring driver engagement; and

c. In order for driving automation systems to be safely deployed in a high-speed operating environment, collision avoidance systems must be able to effectively detect and respond to potential hazards, including roadside traffic safety hardware and be able to execute forward collision avoidance at high speeds.

20. The NTSB ultimately recommended that Tesla incorporate system safeguards that limit the use of automated vehicle control systems to those conditions for which they were designed, or the operational design domain ("ODD").

21. Prior to the Mountain View, California accident, in March 2019, in Delray Beach, Florida, a 2018 Tesla Model 3 struck a semi-trailer truck when the truck entered the highway without stopping. At the time of the crash, the Tesla's Autopilot system was active, and the Tesla was traveling at 68 mph in a 55-mph posted speed limit area. The Autopilot system and collision avoidance systems did not classify the crossing truck as a hazard, did not attempt to slow the vehicle, and did not provide a warning to the driver of the approaching crossing truck. Further, the driver did not take evasive action in response to the crossing truck.

(Am. Compl. ¶¶ 14-15, 18-21)

Tesla argues that these paragraphs should be struck from the Amended Complaint because they do not directly pertain to, and therefore bear no relevance to, the vehicle that Plaintiffs purchased or the accident in which that vehicle was involved. (Mem. at 10-11.) Plaintiffs argue, in response, that these factual allegations "directly bear[] on Plaintiff's claims that Tesla's automated features (including Autopilot) do not operate as expressly and implicitly represented to consumers." (Opp. at 14.)

While the challenged factual allegations are at most tangentially relevant to Plaintiffs' legal claims, they do relate to the subject matter of the litigation: alleged defects with Tesla's Autopilot technology and the extent to which Tesla knew of and disclosed those alleged defects. In addition, evidence of similar accidents may be relevant to illustrate that the incident was not an isolated occurrence. *See Randi A.J. v. Long Is. Surgi-Ctr.*, 46 A.D.3d 74,

85-86 (2d Dep't 2007). Thus, Tesla cannot meet the high standard for success on a Rule 12(f) motion to strike. *See AdvanceMe, Inc.*, No. 11 CV 3624 (VB), 2011 WL 6425488, at *2; *see also Lynch*, 278 F.R.D. at 63. Tesla's motion to strike paragraphs 14, 15, 18, 19, 20, and 21 of Plaintiffs' Amended Complaint is denied.

### IV.    CONCLUSION

For the reasons set forth above, Tesla's Partial Motion to Dismiss is GRANTED IN PART, with respect to Plaintiffs' fraud claim, and DENIED IN PART, with respect to Plaintiffs' prayer for punitive and exemplary damages. Tesla's Motion to Strike certain factual allegations from Plaintiffs' Amended Complaint is DENIED.

SO ORDERED.

Dated:    Brooklyn, New York
          July 16, 2021

                                          /s/ Nicholas G. Garaufis
                                          NICHOLAS G. GARAUFIS
                                          United States District Judge